No. 24-3079

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

UNITED STATES OF AMERICA,

Appellee,

vs.

JEFFREY L. GROSS,

Appellant.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII
District Court No. 1:21-cr-00107

_____

_____

**BRIEF OF APPELLANT**

_____

Jeremy Gordon, Esq.
315 S. Bois D'Arc
Forney, TX 75126
Tel: 972-564-4644
Fax: 866-209-9785
Email: Jeremy@guestandgray.com
TX Bar No. 24049810

*Attorney for Jeffrey L. Gross*

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to 9th Cir. R. 21-3, the following people and entities have an interest in the outcome of this appeal:

Adams, III, Bentley, Attorney for Gross in the District Court

Bagasol, William, Attorney for Gross in the District Court

Boisseau, George, Attorney for Gross in the District Court

Esser, Jacquelyn, Attorney for Gross in the District Court

Eucker, Barbara, Attorney for United States in the Appellate Court

Gordon, Jeremy, Attorney for Gross in the District and Appellate

Courts

Green, Michael, Attorney for Gross in the District Court

Gross, Jeffrey, Appellant

Hoke, Jr., Richard, Attorney for Gross in the District Court

Kanai, Salina, Attorney for Gross in the District Court

Kimura, Harlan, Attorney for Gross in the District Court

Lester, Rebecca, Attorney for Gross in the District Court

Mannisto, Matthew, Attorney for Gross in the District Court

Mansfield, Kenneth, U.S. Magistrate Judge

Nammor, Michael, Attorney for the United States in the District Court

Nichols, Steven, Attorney for Gross in the Appellate Court

O'Grady, Kevin, Attorney for Gross in the District Court

Olson, Christine, Attorney for United States in the District Court

Otake, Jill- U.S. District Judge

Park, Andrew, Attorney for Gross in the District Court

Spector, Sydney, Attorney for United States in District Court

United States of America, Appellee-Respondent

Victor, Marc, Attorney for Gross in District Court

Yates, Gregg, Attorney for United States in Appellate Court

No publicly traded company or corporation has an interest in the outcome of this case or appeal.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant respectfully requests oral argument concerning the issues raised herein. Appellant submits that this Court would be aided in its deliberation by the presence of counsel to comment upon the issues and respond to inquiries from the Court.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS  AND CORPORATE
DISCLOSURE STATEMENT.................................................................... i

STATEMENT REGARDING ORAL ARGUMENT ............................... iii

TABLE OF CONTENTS ......................................................................... iv

**STATEMENT OF JURISDICTION** ...................................................... 1

STATEMENT OF THE ISSUES ............................................................. 2

STATEMENT OF THE CASE ................................................................. 3

   1.   Gross is charged with drug and gun crimes. .................................. 3

   2.   Gross Seeks to Suppress the Evidence Against Him. .................... 3

   3.   Gross Proceeds to Trial and is Found Guilty of All Charges.......... 6

   4.   Gross is Sentenced to 120 months in Prison ................................. 6

STANDARD OF REVIEW ...................................................................... 8

SUMMARY OF THE ARGUMENT .......................................................10

ARGUMENT ..........................................................................................12

   GROUND ONE:  Gross' Convictions on Counts One and Two are
   Unconstitutional as Applied to Gross .................................................12

GROUND TWO:  There was insufficient evidence to find Gross Guilty of the Felon in Possession of a Weapon Charge and the Possession of a Weapon in Furtherance of a Drug trafficking Crime Charge..............16

GROUND THREE:  The District Court Erred by Failing to Hold a *Franks* ...............................................................................21

GROUND FOUR:  The District Court Erred in Denying Gross' Second Motion to Suppress .............................................................24

CONCLUSION..................................................................27

ANTI-VIRUS CERTIFICATION ............................................27

CERTIFICATE OF SERVICE ...............................................28

CERTIFICATE OF COMPLIANCE .......................................28

TABLE OF AUTHORITIES

## Constitutional Provisions

United States Constitution, Fourteenth Amendment............................21

United States Constitution, Fourth Amendment.................................21

United States Constitution, Second Amendment.................................12

## Cases

*Franks vs. Delaware*, 438 U.S. 154 (1978).....................................passim

*Illinois vs. Rodriguez,* 497 U.S. 177 (1990).............................................25

*N.Y. State Rifle & Pistol Ass'n vs. Bruen*, 597 U.S. 1........... 12, 13, 15, 16

*United States vs. Arreguin*, 735 F.3d 1168, 1175 (2013) ........................25

*United States vs. Beasley,* 346 F.3d 930 (9th Cir. 2003)........................18

*United States vs. Carter*, 560 F.3d 1107 (9th Cir. 2009) .......................18

*United States vs. Duarte,* 101 F.4th 657 (9th Cir. 2024) ........... 12, 13, 15

*United States vs. Duarte*, 101 F.4th 657 (9th Cir.)................................. 9

*United States vs. Duarte*, 108 F.4th 786 (9th Cir. 2024) .................12, 16

*United States vs. Duarte*, 108 F.4th 786, 787 (9th Cir. 2024) ...............14

*United States vs. Green*, 592 F.3d 1057 (9th Cir. 2010) ........................18

*United States vs. Martinez-Garcia*, 397 F.3d 1205 (9th Cir. 2005) ........23

*United States vs. Meek*, 366 F.3d 705 (9th Cir. 2004) ............................ 8

*United States vs. Norris*, 942 F.3d 902 (9th Cir. 2019) .....................8, 22

*United States vs. Rahimi*, 144 S. Ct. 1889 (2024) ...........................14, 15

*United States vs. Ramirez*, 976 F.3d 946 (9th Cir. 2020) ....................... 8

*United States vs. Ruiz,* 428 F.3d 877 (9th Cir.2005) .............................25

*United States vs. Savinovich*, 845 F.2d 834 (9th Cir. 1988) ..................19

United *States vs. Senchenko*, 133 F.3d 1153 (9th Cir. 1998)..................22

*United States vs. Stauert*, 762 F.2d 775 (9th Cir. 1985), *amended*, 769

   F.2d 1410 (9th Cir. 1985)....................................................................22

*United States vs. Thrasher*, No. 20-30275, 2022 WL 986684 (9th Cir.

   Mar. 31, 2022) ..................................................................................... 8

*United States vs. Vongxay*, 594 F.3d 1111 (9th Cir. 2010) .....................16

*United States vs. Washington*, 490 F.3d 765 (9th Cir. 2007)...................8

*United States vs. Welch,* 4 F.3d 761 (9th Cir.1993) ...............................25

## Statutes

18 U.S.C. § 3742(a) .................................................................................. 1

18 U.S.C. § 922...........................................................................passim

18 U.S.C. § 924...........................................................................3, 16, 18

21 U.S.C. § 841............................................................................................ 3

28 U.S.C. § 1291.......................................................................................... 1

**Rules**

Fed R. Crim. Proc. 12.................................................................. 8

Fed R. Crim. Proc. 52.................................................................. 8

## **STATEMENT OF JURISDICTION**

This is an appeal from final judgment in criminal case number 1:21-cr-00107 from the United States District Court for the District of Hawaii. Final judgment of conviction was entered on May 13, 2024. 1-ER-1. Gross submitted a timely notice of appeal on May 13, 2024. 4-ER-290. This Court has jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## STATEMENT OF THE ISSUES

1.    Whether Gross's Felon in Possession in a Weapon charges are Unconstitutional as applied to Gross.

2.    Whether sufficient evidence existed to sustain a conviction for Felon in Possession of a Weapon and Possession of a Firearm in Furtherance of a Drug Trafficking Crime.

3.    Whether the District Court erred in denying a *Franks* hearing.

4.    Whether the District Court erred in denying Gross's motion to suppress.

## STATEMENT OF THE CASE

### 1.   Gross is charged with drug and gun crimes.

Gross was first indicted in the District of Hawaii on August 12, 2021. His sole count on the initial indictment was Felon in Possession of a Firearm in violation of 18 U.S.C. §§ 922(g)(1) and 18 U.S.C. § 924. Gross was arrested and the District Court begin pretrial litigation in the case.

On October 26, 2023, a Third Superseding Indictment was filed against Gross. 3-ER-290. The Third Superseding indictment charged Gross with four counts. Count One charged Gross with Felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), Count Two charged Gross with Felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), Count Three charged Gross with Manufacturing and possession with intent to distribute Marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), and Count 4 charged Gross with Possession of a Firearm in Violation of 18 U.S.C. § 924(c)(1)(A)(i).  2-ER-293.

### 2.   Gross Seeks to Suppress the Evidence Against Him.

Gross filed Motions to Suppress Evidence in this case.  As stated by the District Court, Gross' second motion argued that on June 29, 2021

and June 30, 2021 the Hawai'i County Police Department conducted "illegally confirmatory search[es]" prior to the July 30, 2021 search warrant execution. 1-ER-40. The District Court deemed these the "June Incursions." 1-ER-11. Gross further stated that HPD sent a confidential informant onto his property to investigate criminal activity without a warrant. *Id.* Gross further indicated that the June incursions were not mentioned in the affidavit in support of the search warrant. Gross specifically indicated that he was not filing anything regarding *Franks vs. Delaware* as that would be filed later. 1-ER-12.

Gross filed another "motion to suppress." 1-ER-13. This time Gross sought an evidentiary hearing under *Franks*.

> In the *Franks* Motion, Gross contended that several facts related to the CI's reliability (such as her criminal history) and motivation to falsify evidence against him (such as her alleged theft of Gross' car) were omitted from the search warrant Affidavit. Id. At 3-4. Additionally, he asserted that the Affidavit falsely indicated that the CI was under "'continuous surveillance" during the controlled buy. Id. at 4-5. Finally, he claimed that the controlled buy was completely unsupported by any real facts and "must be stricken." from the Affidavit. *Id.* at 5-6.

1-ER-13. The District Court scheduled an evidentiary hearing on the motion to suppress on August 23, 2023. A transcript was prepared. 2-ER-42. That hearing was not a *Franks* hearing, and the District Court

4

made that clear. 2-ER-47, line 25, 2-ER-110 at line 10 through 2-ER-111 at line 13, 2-ER-118 at lines 14-25, 2-ER-141 at line 16 through 2-ER-132 at line 5, 2-ER-146 at lines 1-9, 2-ER-153 at line 16 through 2-ER-154 at line 20, 2-ER-170 at line 10, 2-ER-173 at line 15-25. After the hearing the District Court asked for additional briefing regarding details about the omission of the June incursions from the affidavit.

Despite the allegation that there were four omissions and two false statements in the search warrant affidavit and despite finding that there was a misleading omission, the District Court denied the *Franks* motion and did not allow for a *Franks* hearing. 1-ER-10 through 1-ER-42. However the District Court also found that Officer Kaili-Leong's failure to include in the affidavit the fact that he asked the Confidential Informant ("CI") to text him photographs of the marijuana grow she reported seeing on his property and that she did not do so despite sending him other videos was reckless and indicated that the Gross had met his burden with regard to the first prong of the *Franks* analysis. Further, the District Court noted that the statement by Officer Kaili-Leong that he surveilled the CI as she entered and left Gross' residence was also false and that the misstatement was reckless. 1-ER-34. The court also noted

that the testimony elicited by the government during the MTS Hearing suggested a lack of care throughout the affidavit. However, the court noted that in determining the materiality of the statements, that in correcting the misrepresentations and including the omissions, the court would have found probable cause. 1-ER-34 through 1-ER-41.

Similarly, The District Court found that Kaili-Leong reasonably believed that the CI had the authority to consent to a search of Gross' property because she informed him that she stayed there, but further that probable cause for the search was independently sourced by the controlled buy that occurred. *Id.*

3.    Gross Proceeds to Trial and is Found Guilty of All Charges.

Gross proceeded to trial. At the end of the trial Gross was found guilty on all charges. 1-ER-001.

4.    Gross is Sentenced to 120 months in Prison

Gross was sentenced on May 10, 2024. Gross was sentenced to 120 months in prison.  *Id.* That sentence consisted of 60 months as to each of Counts 1, 2 and 3 to run concurrently to each other, and 60 months as to Count 4, to run consecutively to Counts 1, 2, and 3. *Id.*

Gross timely filed a notice of appeal in the case on May 13, 2024.  3-
ER-297.

This appeal follows.

## STANDARD OF REVIEW

The Ninth Circuit uses a *de novo* standard to review a District Court's denial of a motion to suppress and a clear error standard for factual findings. *United States vs. Ramirez*, 976 F.3d 946, 951 (9th Cir. 2020), *quoting United States vs. Washington*, 490 F.3d 765, 769 (9th Cir. 2007). The Ninth Circuit uses a *de novo* standard to review the denial of a *Franks* hearing and a clear error standard for the finding of probable cause for a search warrant. *United States vs. Thrasher*, No. 20-30275, 2022 WL 986684, at *1 (9th Cir. Mar. 31, 2022), *see also United States vs. Norris*, 942 F.3d 902, 907 (9th Cir. 2019) (*Franks* hearing standard), *United States vs. Meek*, 366 F.3d 705, 712 (9th Cir. 2004) (probable cause standard).

"Rule 52(b)'s plain error standard is the default standard governing ... consideration of issues not properly raised in the district court and thus ordinarily applies when a party presents an issue for the first time on appeal.  But when the untimely issue is a Rule 12(b)(3) defense or objection to a criminal indictment, Rule 12's good-cause standard ... displac[es] the plain-error standard under Rule 52(b). if the defendant demonstrates good cause for failing to raise the Rule 12(b)(3)

issue below, we may consider it for the first time and will apply whatever default standard of review would normally govern the merits, which in this case is de novo review." *United States vs. Duarte*, 101 F.4th 657, 663 (9th Cir.), *reh'g en banc granted, opinion vacated,* 108 F.4th 786 (9th Cir. 2024) (internal quotation and citation omitted).

## SUMMARY OF THE ARGUMENT

Gross' convictions on Counts One and Two are unconstitutional as applied to Gross. Recent Supreme Court caselaw indicates that Gross' Felon in possession of a weapon charge is unconstitutional. Gross had good reason not to present this caselaw at the time of his conviction, but the case law that existed at the time of his conviction is clearly irreconcilable with Supreme Court caselaw and no longer controls.

Further, there was insufficient evidence to find Gross Guilty on the Felon in Possession of a Weapon counts and the Possession of a Firearm in Furtherance of a Drug Trafficking Crime Count. There was insufficient evidence to show that Gross had sufficient control over the shipping container conex that the firearms were in, there was not enough evidence to show that the firearm that was at his bedside table was in his possession and testimony at the trial showed that Gross did not have access or possession of the items inside the conex.

The *Franks* hearing was erroneously denied. Gross submits that there was no probable cause to go forward with the warrant after the District Court's findings about the break in surveillance as well as the information that the District Court Found was omitted.

10

Lastly, the District Court erred when determining that there was probable cause to grant the warrant. First, the CI did not have apparent authority to search the property. Second, Gross disputes that the controlled buy ever occurred.

<u>ARGUMENT</u>

<u>GROUND ONE:  Gross' Convictions on Counts One and Two are</u>

<u>Unconstitutional as Applied to Gross</u>

When Gross was arrested, multiple firearms were found at his house.  And Gross was found to have previously committed a felony. 3-ER-290. These things served as the basis of his two counts of Felon in Possession of a Weapon. *See* 2-ER-293 through 2-ER-299, *see also* 18 U.S.C. § 922(g)(1).

Gross submits that the Felon in Possession of a Weapon Statute, 18 U.S.C. § 922(g)(1) is unconstitutional as applied to him.

This Court has previously considered the constitutionality of § 922(g)(1) in *United States vs. Duarte,* 101 F.4th 657 (9th Cir. 2024), *overruled pending en banc consideration, United States vs. Duarte*, 108 F.4th 786 (9th Cir. 2024). In *Duarte*, this court applied the test found in *N.Y. State Rifle & Pistol Ass'n vs. Bruen*, 597 U.S. 1, (2022):

> Step one of *Bruen* asks the "threshold question," whether "the Second Amendment's plain text covers" (1) the individual, (2) the type of arm, and (3) the "proposed course of conduct" that are at issue...

*Duarte*, 101 F.4th at 670-71 (quoting *Bruen*, 597 U.S. at 19, 31-32). This Court went on to find that Duarte was one of the "the people" because he was an American citizen. *Id.* At 671.

As explained in *Duarte* the second step of *Bruen* required that the Government must "prove that it 'is consistent with this Nation's historical tradition of firearm regulation' for Congress to ban permanently, by making it a felony, a non-violent offender like Duarte from possessing a firearm even after he has already served his terms of incarceration. *Duarte,* 101 F.4th at 676-77, *quoting Bruen*, 597 U.S. at 34. This Court noted that the "Second Amendment's plain text and historically understood meaning therefore presumptively guarantee his individual right to possess a firearm for self-defense. *Duarte*, 101 F.4th at 691. This Court also held that in Duarte's case that the "Government failed to rebut that presumption by demonstrating that permanently depriving Duarte of this fundamental right is otherwise consistent with our Nation's history." *Id.* At 691. As such, the Court held that § 922(g)(1) violated Duarte's rights as applied to him. *Id.*

The panel opinion in *Duarte* was vacated when the government "acquiesced in *certiorari* in a handful of cases pending before the Court

13

and presenting the same question addressed in [*Duarte*]. *United States vs. Duarte*, 108 F.4th 786, 787 (9th Cir. 2024)(Vandyke, Circuit Judge, dissenting from the grant of rehearing *en banc*). The government made that decision '[f]ollowing the Supreme Court's recent decision in *United States vs. Rahimi*, 144 S. Ct. 1889, (2024) …". *Id.*

In *Rahimi*, the United States Supreme Court held that "[a]n individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment. *Rahimi*, 144 S. Ct. at 1903. However, it should be noted that Rahimi's case and statute of conviction are drastically different than Gross'. Rahimi was convicted of the offense of possessing a firearm while subject to a domestic violence restraining order, in violation of 18 U. S. C. §922(g)(8). *Id.* At 1895. The Court found that "surety and going armed laws confirm what common sense suggests: When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *Id.* At 1901. And the court found that "[l]ike the surety and going armed laws, Section 922(g)(8)(C)(i) applies to individuals found to threaten the physical safety of another. This provision is "relevantly similar" to those founding era regimes in both

14

why and how it burdens the Second Amendment right." *Id.* However, those criteria also show how § 922(g)(1) fails as applied to Gross.

Gross had several firearms inside his residence, but there was no evidence that Gross was a clear threat of physical violence to another the same way *Rahimi* was to the person of whom had a domestic violence restraining order against him. Thus, the surety and going armed laws do not apply to him.

As Gross is one of "the people" that the Second Amendment's plain text covers, the burden shifts to the government to "prove that it 'is consistent with this Nation's historical tradition of firearm regulation' for Congress to ban permanently, by making it a felony, a non-violent offender like [Gross] from possessing a firearm even after he has already served his terms of incarceration. *Duarte,* 101 F.4th at 676-77, *quoting Bruen*, 597 U.S. at 34.

Gross did not bring forth this claim in the District Court. Under normal circumstances that would cause this claim to be reviewed under a plain error standard. *See Duarte,* 101 F.4th at 662. But good cause exists for "for asserting [Gross's] constitutional claim now instead of then. *Duarte*, 101 F.4th at 663. Just like in *Duarte*, *United States vs. Vongxay*,

15

594 F.3d 1111 (9th Cir. 2010) was the law at the time of Gross's conviction, but "*Vongxay*'s reasoning is clearly irreconcilable with *Bruen* and its holding therefore no longer controls." *Duarte*, 101 F.4th at 665 (internal citation and quotation omitted). As such, just like *Duarte*, the Court can use a *de novo* standard to consider the impact *Bruen*.

GROUND TWO: There was insufficient evidence to find Gross Guilty of the Felon in Possession of a Weapon Charge and the Possession of a Weapon in Furtherance of a Drug trafficking Crime Charge.

Gross was charged in the Third Superseding Indictment with two counts of Felon in Possession of a Weapon and one count Possession of a Firearm in Furtherance of a Drug Trafficking Crime. 2-ER-293 through 2-ER-299, 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(c)(1)(A).

Officer Kaili-Leong Determined that overall, fifteen firearms were found on the day of the search, one inside the house upstairs near the bed and fourteen outside the house in a shipping container. 4-ER-407 at lines 19 through 4-ER-408 at 1. The firearm near the bed and related ammunition served as the basis of Counts One and Four of the Third Superseding indictment. The other firearms serve as Count Two of the Third Superseding indictment. 2-ER-293 through 3-ER-299.

16

During the trial evidence came up that put into question whether Gross had possession of the firearms at issue. Detective Kerr with the Hawaii Police Department indicated that the safes at issue here appeared to have been pried open and the rail where the locks went in had been bent. Further, questions arose as to whether the safes had locks that had been removed and whether keys had been found. 4-ER-429 at line 1 through 4-ER-432 at line 3. Lt. Zachary Fernando testified that the safes that were inside the conex and that the conex said "Property of WWG[.]" 4-ER-372 at lines 15-16. Officer Mata with the Hawaii Police Department indicated that he could not recall if there was any marijuana drying in the shipping container, which was next to the house, nor was there marijuana or drugs found in the living room with the firearm. 4-ER-504 at line 15 through 4-ER-505 at line 2.

Gross called Wynter-Waiuni Gross ("Wynter") to the stand on the third day of the trial. Wynter testified that he owned the firearms and that he had them shipped to Hawaii, writing "Property of WWG" on the shipping container and safes. 5-ER-664 at lines 1-13. He also indicated that he had never given a key to the safe or the Conex to Gross. *Id.* At 5-

17

ER-667 at lines 5-17, 5-ER-687. Wynter also testified that the safes appeared to have been pried open 5-ER-683.

The "possession" element is inherent in the determination of whether there is sufficient evidence to find someone guilty of an offense under § 922(g) and § 924(c). *See* generally, 18 U.S.C. § 924(c) and 922(g), *see also United States vs. Beasley,* 346 F.3d 930, 933–34 (9th Cir. 2003) (discussing elements of § 922(g)).

"In reviewing a conviction for sufficiency of the evidence, we "must determine 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."' *United States vs. Carter*, 560 F.3d 1107, 1112–13 (9th Cir. 2009) (internal citation omitted). Because Gross did not file a motion for acquittal at the close of evidence, the Court uses a plain error standard. *See United States vs. Green*, 592 F.3d 1057, 1065 (9th Cir. 2010) (internal citation omitted).

Gross submits that there was insufficient evidence to find him guilty of these offenses even by a plain error standard. The weapons that were in the conex were clearly under lock and key when the police

arrived, with evidence strongly suggesting that the police had to pry the safes open to find the firearms. And evidence further showed that Wynter had the keys to the conex, not Gross.

Without a way to access the conex, there was no way for Gross to be in possession of the firearms that were present inside the conex. Without a way for him to access the conex and with another person indicating that none of the firearms that were in the conex belonging to Gross, there is not enough evidence that the Felon in possession of a weapon concerning the firearms that were in the conex were under the possession of Gross.

Similarly, there is not enough evidence to find Gross guilty of the firearm that was near the bed, which served as both the basis of Counts One and Four. First, mere presence near the firearms does not equate possession. *See United States vs. Savinovich*, 845 F.2d 834, 837 (9th Cir. 1988). In this situation there was no DNA evidence, fingerprints nor was many of the other key indicators of possession. As such, there was insufficient evidence to find Gross guilty of Counts One and Four, pertaining to the firearm that was near Gross' bed.

Similarly, there was insufficient evidence regarding the texts that were allegedly sent from Gross' phone regarding the drugs and other activity related to the drugs.

Bruce Law testified on the third day of trial testimony 6-ER-681. He testified, generally, that a set of texts were sent back and forth regarding drugs, guns and other matters concerning asset protection at the residence. 6-ER-681 through 6-ER-701. But on cross-examination, it was shown that there were no threats regarding physical violence or that anyone was going to hurt them.

Further, Wynter Gross ("Wynter") testified on the third day of trial. 6-ER-749. Wynter testified that he bought the conex in Alaska and brought it to Hawaii in 2016. *Id.* At 5-ER-662 14 lines 14-19. He indicated that the safes inside the conex said "property of WWG" as well as the conex itself. *Id.* At 5-ER-664 at lines 4-11, 5-ER-636 at lines 1-17. Wynter also indicated that there were locks on the safes. 5-ER-666 at lines 2-22. Wynter also indicated that he did not give Gross a key to the safes. 5-ER-667 at lines 9-12.  Further, Wynter indicated that the texts that were offered to indicate that Gross was explaining how to ambush someone on his land was not something that Gross would send Wynter. 5-ER-678 at

lines 9 through 65-ER-679 at line 7. In addition, Wynter indicated that he had never seen Gross with any gun before. *Id.* At 5-ER-684 at Lines 18-19. There was not enough evidence to support a finding of guilt regarding the firearms that were in the conex, which was Count 2 of the indictment, or to substantiate a conviction on the 924(c) charge.

GROUND THREE:  The District Court Erred by Failing to Hold a *Franks* Hearing.

Whether an omission or misstatement should cause a warrant to be invalidated was answered by the Supreme Court in *Franks*:

> "To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.[8] On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth

Amendments, to his hearing. Whether he will prevail at that hearing is, of course, another issue.

*Franks vs. Delaware*, 438 U.S. 154, 171–72 (1978). The Ninth Circuit has considered the criteria for a hearing on a *Franks* motion:

> "To obtain a Franks hearing, a defendant must make a substantial preliminary showing that: (1) the affiant officer intentionally or recklessly made false or misleading statements or omissions in support of the warrant, and (2) the false or misleading statement or omission was material, i.e., necessary to finding probable cause."

*United States vs. Norris*, 942 F.3d 902, 909–10 (9th Cir. 2019) (internal quotation marks, citation omitted). A misrepresentation evinces a reckless disregard for the truth where an affiant had a "high degree of awareness of probable falsity." United *States vs. Senchenko*, 133 F.3d 1153, 1158 (9th Cir. 1998). "Clear proof of deliberate or reckless omission is not required." *United States vs. Stauert*, 762 F.2d 775, 781 (9th Cir. 1985), *amended*, 769 F.2d 1410 (9th Cir. 1985) (citation omitted).

Gross submits that the District Court erred when determining that despite the omitted information and the surveillance break in the affidavit, that said affidavit still would have been supported by probable cause. First, the District Court did not find that the informant's

information "was bolstered by independent police investigation of the tip or corroboration by other confidential informants." *United States vs. Martinez-Garcia*, 397 F.3d 1205, 1216 (9th Cir. 2005). Secondly, to include the previously omitted information about the CI's inability to take pictures of the marijuana grow in the house without information as to why such failure happened hurts the credibility of the Government. Lastly, the failure of the officer to include the surveillance break potentially harms the analysis because it shows that the independent police investigation was sloppy and lacking

Further, as will be discussed below, Gross disputes that the controlled buy happened at all. *Ante*, at 26. This matters because if the Court determines that the controlled buy did not happen it would be a misrepresentation that evinces a reckless disregard for the truth. And because the District Court used the controlled buy to determine that probable cause existed for the warrant to be issued. 1-ER-40-41. Had the officer explained to the District Court that there was no controlled buy, that would have substantially impacted the granting of the warrant against Gross.

23

Based on the above, the District Court erred in denying Gross'
*Franks* hearing.

GROUND FOUR: The District Court Erred in Denying Gross'
Second Motion to Suppress

Gross filed a second motion to Suppress. 2-ER-263. As stated by the
district court, the motion challenged the probable cause for the search
warrant based on two arguments: "first, that Kaili-Leong falsified the
controlled by described in the Affidavit, and second, that the June
incursions amounted to "confirmatory searches." 1-ER-40.

The District Court found that Kaili-Leong reasonably believed that
the CI had the authority to consent to a search of Gross' property because
she informed him that she stayed there, but further that probable cause
for the search was independently sourced by the controlled buy that
occurred. *Id.*

Inherent in the question into whether the June Incursions were
searches is the question of Apparent Authority. "Under the apparent
authority doctrine, a search is valid if the government proves that the
officers who conducted it reasonably believed that the person from whom
they obtained consent had the actual authority to grant that consent."

24

*United States vs. Arreguin*, 735 F.3d 1168, 1175 (2013), *quoting United States vs. Welch,* 4 F.3d 761, 765 (9th Cir.1993). "Apparent authority is measured by an objective standard of reasonableness, and requires an examination of the actual consent as well as the surrounding circumstances." *Arreguin*, 735 F.3d at 1175, *quoting United States vs. Ruiz,* 428 F.3d 877, 881 (9th Cir.2005). Thus, in assessing whether an officer's belief was objectively reasonable, the court considers "the facts available to the officer *at the moment.*" *Arreguin*, 735 F.3d at 1175, *quoting Illinois vs. Rodriguez,* 497 U.S. 177, 188 (1990).

The government has the burden of establishing apparent authority to each specific area searched, not just authority to consent to a generalized search of a residence. *Arreguin*, 735 F.3d at 1175 (internal quotation omitted).

During the suppression hearing the only thing that was communicated by the government and their witness was that Officer Kaili-Leong believed that the CI "stayed" at his residence. 2-ER-111. But the court also heard evidence from Gross that the CI did not live there and further evidence from the hearing indicated that the CI lived at their mother's house. 2-ER-127 at lines 11 through 2-ER-128 at 1. The evidence

that the Government presented at the hearing did not meet the standard of reasonableness as provided for in *Arreguin*. As such, the District Court respectfully erred when determining that the CI had Apparent Authority to consent to a search of Gross' property. As such, the June incursions were not valid searches.

The District Court, however, found that the independent source doctrine applied to the search of the house because of the controlled buy that was engaged in by the government and their witness. *See* 1-ER-41. However, Gross disputes the court's finding that the controlled buy happened. As indicated, Gross has previously indicated that the execution of controlled purchases of drugs was not followed. 2-ER-187. Gross also indicated that the CI had a motive to encourage HPD to arrest him, that being the theft of Gross' vehicle. *Id*. This matters because the District Court also found that Kaili-Leong did not mention in the affidavit that the CI utilized a car for purposes of the controlled buy. 1-ER-25. This shows that the District Court's findings around the buy were in error.

Upon removal of the information concerning the controlled buy there was enough evidence to find that the independent source doctrine

did not apply and as such that the warrant was illegally obtained. Gross respectfully submits that the District Court erred in the denial of the motion to suppress.

## CONCLUSION

For the above reasons, this court should vacate Gross' judgment and sentence.

Respectfully Submitted,

/s/ Jeremy Gordon
Jeremy Gordon
315 S. Bois D'Arc
Forney, TX 75126
972-564-4644
866-209-9785
jeremy@guestandgray.com
Attorney for Appellant

## ANTI-VIRUS CERTIFICATION

I, Jeremy Gordon, certify the foregoing has been scanned for viruses using commercial virus detection software and no viruses were detected.

Signed: /s/ Jeremy Gordon

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was duly served on all counsel of record via the Court's CM/ECF system this 7th day of January 2024.

<u>/s/ Jeremy Gordon</u>

<u>CERTIFICATE OF COMPLIANCE</u>

This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), This document contains 4,675 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Mac in 14-point Century Schoolbook Font.

<u>/s/ Jeremy Gordon</u>
Jeremy Gordon