**No. 24-3079**

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

———————————

## UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

## JEFFREY L. GROSS,

Defendant-Appellant.

———————————

On Appeal From the United States District Court
for the District of Hawaii
Crim. No. 21-00107 JAO

———————————

## BRIEF FOR APPELLEE

———————————

KENNETH M. SORENSON
  *Acting United States Attorney*
  *District of Hawaii*

GREGG PARIS YATES
  *Assistant U.S. Attorney*
  *United States Attorney's Office*
  *Room 6-100*
  *PJKK Federal Building*
  *300 Ala Moana Blvd.*
  *Honolulu, Hawaii  96850*
  *Telephone:  (808) 541-2850*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................... 1

JURISDICTION, TIMELINESS, AND CUSTODY STATUS ................. 2

STATEMENT OF THE ISSUES ............................................................ 3

PERTINENT STATUTES AND REGULATIONS ................................. 3

STATEMENT OF THE CASE ............................................................... 4

      A.    Gross was Arrested After Law Enforcement Seized
            Fifteen Firearms and Over 200 Marijuana Plants From
            His Property During a Warranted Search. ........................... 4

      B.    Gross was Charged with Firearm and Drug Offenses. .......... 5

      C.    Gross Filed Pretrial Motions to Suppress Evidence and
            for a *Franks* Hearing. ...................................................... 6

      D.    Gross was Convicted After a Four-Day Jury Trial. ................ 7

SUMMARY OF ARGUMENT .............................................................. 8

STANDARD OF REVIEW ................................................................... 9

ARGUMENT ..................................................................................... 11

I.    THE FELON IN POSSESSION STATUTE DOES NOT
      VIOLATE THE SECOND AMENDMENT ................................... 11

II.   THE TRIAL EVIDENCE STRONGLY SUPPORTED
      GROSS'S CONVICTIONS ON THE FIREARM COUNTS .......... 13

III.  THE DISTRICT COURT CORRECTLY FOUND THE
      SEARCH WARRANT WAS SUPPORTED BY PROBABLE
      CAUSE. ....................................................................................... 20

A.    The District Court Correctly Found That the Omitted Derogatory Information About the Confidential Informant and Gaps in Surveillance Did Not Undermine Probable Cause. .................................................. 21

B.    The District Court Properly Denied the *Franks* Motion and Suppression Motion Based on the Record of the Controlled Drug Purchase. .................................................. 27

CONCLUSION .......................................................................... 31

## TABLE OF AUTHORITIES

Cases                                                                    Page(s)

*District of Columbia v. Heller,*
   554 U.S. 570, 635, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008) ............. 12

*Murray v. United States,*
   487 U.S. 533 (1988) ................................................................ 29

*New York State Rifle & Pistol Ass'n v. Bruen,*
   597 U.S. 1, 142 S.Ct. 2111, 213 L.Ed.2d 387 (2022) ........................ 12

*Shlup v. Delo,*
   513 U.S. 298, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995) ............... 19-20

*United States v. Arreguin,*
   735 F.3d 1168 (9th Cir. 2013) ................................................ 10, 28, 30

*United States v. Benamor,*
   937 F.3d 1182 (9th Cir. 2019) ..................................................... 9-10

*United States v. Bennett,*
   219 F.3d 1117 (9th Cir. 2000) ......................................................... 21

*United States v. Brugnara,*
   856 F.3d 1198 (9th Cir. 2017) ..................................................... 9, 20

*United States v. Carillo-Lopez,*
   68 F.4th 1133 (9th Cir. 2023) ......................................................... 11

*United States v. Craighead,*
   539 F.3d 1073, 1082 (9th Cir. 2008) ................................................ 30

*United States v. Duarte,*
   101 F.4th 657 (9th Cir. 2024) ..................................................... *passim*

*United States v. Duarte,*
   108 F.4th 786 (9th Cir. 2024) ......................................................... 11

*United States v. Flyer,*
   633 F.3d 911 (9th Cir. 2011) ................................................... 9-10, 14

iii

Cases                                                           Page(s)

*United States v. Green,*
   592 F.3d 1057 (9th Cir. 2010) ........................................................ 14

*United States v. Hylton,*
   30 F.4th 842 (9th Cir. 2022) ......................................................... 10

*United States v. Ippolito,*
   774 F.2d 1482 (9th Cir. 1985) ....................................................... 23

*United States v. Martinez-Garcia,*
   397 F.3d 1205 (9th Cir. 1983) .......................................... 23, 24, 26

*United States v. Meling,*
   47 F.3d 1546 (9th Cir. 1995) ......................................................... 21

*United States v. Mohamud,*
   843 F.3d 420 (9th Cir. 2016) ........................................................... 9

*United States v. Nevils,*
   598 F.3d 1158 (9th Cir. 2010) .................................................... 9, 20

*United States v. Norris,*
   942 F.3d 902 (9th Cir. 2019) ......................................................... 10

*United States v. Overton,*
   573 F.3d 679 (9th Cir. 2009) ........................................................... 9

*United States v. Rahimi,*
   602 U.S. 680, 144 S.Ct. 1889, 219 L.Ed. 2d 351 (2024) ............. 12, 13

*United States v. Reeves,*
   210 F.3d 1041 (9th Cir. 2000) ....................................................... 24

*United States v. Saelee,*
   51 F.4th 327 (9th Cir. 2022) ......................................................... 29

*United States v. Scrivner,*
   114 F.3d 964 (9th Cir. 1997) ......................................................... 14

*United States v. Shyrock,*
   342 F.3d 948 (9th Cir. 2003) ......................................................... 10

| Cases | Page(s) |
|---|---|

*United States v. Stargell,*
738 F.3d 1018 (9th Cir. 2013) ...................................................... 16, 30

*United States v. Thongsy,*
577 F.3d 1036 (9th Cir. 2009) ........................................................... 14

*United States v. Vongxay,*
594 F.3d 1111 (9th Cir. 2010) ............................................ 9, 11-12, 13

*United States v. Wong,*
334 F.3d 831 (9th Cir. 2003) ............................................................. 10

*United States v. Yinjun Zhou,*
838 F.3d 1107 (9th Cir. 2016) ........................................................... 14

| Statutes and Rules | Page(s) |
|---|---|

18 U.S.C. § 922 ............................................................................ *passim*

18 U.S.C. § 924 .................................................................... 1, 3, 6, 14

18 U.S.C. § 3231 ................................................................................... 2

21 U.S.C. § 841 ............................................................................... 1, 6

28 U.S.C. § 1291 ................................................................................. 2

# INTRODUCTION

Defendant-Appellant Jeffrey Loran Gross appeals his conviction on four counts after a jury verdict: felon in possession of a firearm and ammunition (Count 1) and felon in possession of a firearm (Count 2), both in violation of 18 U.S.C. § 922(g)(1); manufacture or possession with intent to distribute 100 or more marijuana plants, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) (Count 3); and possession of a firearm in furtherance of, and using and carrying during and in relation to, a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 4).

First, Gross challenges the constitutionality of his convictions under 18 U.S.C. § 922(g)(1) based upon the now-vacated opinion in *United States v. Duarte*, 101 F.4th 657 (9th Cir. 2024). Second, Gross claims the evidence from the four-day trial was insufficient to sustain his convictions on the firearm counts (Counts 1, 2, and 4). And finally, Gross argues that the district court erred in denying his motions for a *Franks* hearing and to suppress evidence because the district court improperly relied on the independent source doctrine to find probable

cause for a search warrant, despite omissions and a misrepresentation in the supporting affidavit.

Gross's constitutional argument fails because it is based solely upon a vacated opinion with zero precedential effect. Moreover, as shown below, the evidence at trial, viewed in the light most favorable to the government, amply supports each of Gross's convictions. Finally, the district court's factual findings regarding Gross's motions for a *Franks* hearing and to suppress evidence are not clearly erroneous, and the district court properly denied both motions after determining that, despite deficiencies in the affidavit, the search warrant was supported by established probable cause.

Gross's convictions and judgment should be affirmed.

## JURISDICTION, TIMELINESS, AND CUSTODY STATUS

The district court had jurisdiction under 18 U.S.C. § 3231, and this Court has jurisdiction over this appeal under 28 U.S.C. § 1291.

Gross is currently serving a 120-month sentence at the United States Penitentiary Tucson (USP Tucson) in the District of Arizona. His projected release date from federal custody is February 4, 2030.

2

## STATEMENT OF THE ISSUES

1.    Whether Gross's convictions under 18 U.S.C. § 922(g)(1) are unconstitutional as applied to him, requiring reversal, based on this Court's vacated opinion in *United States v. Duarte.*

2.    Whether there was sufficient evidence to support the jury's convictions of Gross for possessing firearms and ammunition in violation of 18 U.S.C. § 922(g), and using and carrying a firearm in connection with, and possessing a firearm in furtherance of, a drug trafficking crime, in violation of 18 U.S.C. § 924(c).

3.    Whether the district court properly upheld the search warrant despite flaws in the affidavit, based on independent probable cause from a controlled purchase of marijuana from Gross, and whether it clearly erred in finding the confidential informant reliable and the officers' account of the controlled drug purchase credible.

## PERTINENT STATUTES AND REGULATIONS

Pertinent statutes and regulations are reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

A.     **Gross was Arrested After Law Enforcement Seized Fifteen Firearms and Over 200 Marijuana Plants From His Property During a Warranted Search.**

On or about July 30, 2021, Hawaii Police Department (HPD) officers executed a search warrant upon a property owned and occupied by Gross in the District of Hawaii.  ER 375.  The property consisted of a parcel of land on the island of Hawaii, with a two-story house and a Matson shipping container on the property.  ER 394, 481.  The house had two bedrooms and a kitchen on its upper floor and a separate bedroom and laundry on its lower floor, accessible from the upstairs suite only by a set of stairs on the exterior of the house.  ER 377, 481.

HPD officers initiated the search at approximately 6:00 a.m. by announcing their presence and making their way to the upstairs portion of the house, where they encountered Gross, unclothed.  ER 376-77. The officers discovered two bedrooms upstairs.  ER 381-82.  One bedroom was occupied by Gross's disabled daughter.  ER 382, 440.  The other bedroom contained an empty bed with a loaded 9mm Sig Sauer semi-automatic handgun on it, partially hidden under a pillow.  ER 383-85.  Elsewhere in the house, officers found ammunition for a rifle and a

4

shotgun, a cellphone, and six gallon-size Ziploc bags filled with marijuana. Excerpts of Record ("ER") 453-58, 462-65, 484-87.

HPD officers also searched the Matson shipping container on the property. ER 395. In the container, the officers seized a total of 14 firearms. ER 407-08. Two rifles were located just inside the container doors; the remainder were in gun safes. ER 395, 427. In addition, officers seized from the container: two bags of marijuana, Kevlar from a bulletproof vest, various ammunition, and a parcel and a bank card, both bearing Gross's name. ER 395, 401-02, 468.

In addition to the aforementioned items, the HPD officers searching the property discovered two garden plots that were approximately 75 yards from the main house. ER 394, 479-80. These plots together contained 232 marijuana plants in various stages of growth. ER 496.

### B. Gross was Charged with Firearm and Drug Offenses.

On August 12, 2021, Gross was charged in an Indictment with a single count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). ER 867 (Docket ECF No. 1). On August 19, 2021, Gross was arrested. *Id.*

On October 26, 2023, a Federal grand jury returned a Third Superseding Indictment against Gross, which charged him with two counts of being a felon in possession of firearms and ammunition in violation of in violation of 18 U.S.C. § 922(g)(1), one count of the manufacture and possession with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), and one count of possession of a firearm in furtherance of, and using and carrying during and in relation to, a drug trafficking crime, in violation of in violation of 18 U.S.C. § 924(c)(1)(A)(i).  ER 293-99.

## C. Gross Filed Pretrial Motions to Suppress Evidence and for a *Franks* Hearing.

Gross filed two pretrial motions that are relevant to this appeal. On or about April 25, 2023, Gross filed a brief entitled, "Motion to Suppress (Second)" ("Suppression Motion").  ER 263.  The Suppression Motion sought to suppress evidence seized on July 30, 2021 on the ground that the warrant for the search was based upon two allegedly unlawful "confirmatory searches" conducted by a confidential informant acting at the government's direction, and on the ground that the affidavit was based upon false statements.  ER 264-67.

On or about June 22, 2023, Gross filed a "Motion to Suppress (Evidentiary Hearing Requested)" ("*Franks* Motion"). The *Franks* Motion also contested the government's search warrant for Gross's property, but sought an evidentiary hearing to establish that the warrant depended upon an unreliable and biased confidential informant, as well as false statements by the affiant. ER 184-87.

The district court held an evidentiary hearing on both motions on August 17, 2023. ER 915 (Docket, ECF No. 273).

On September 8, 2023, the district court entered an order denying both the Suppression Motion and the *Franks* Motion. ER 10-42.

### D. Gross was Convicted After a Four-Day Jury Trial.

Jury selection for Gross's trial began on November 11, 2023. After a four-day trial, including two-and-a-half days of testimony, the jury convicted Gross—who represented himself *pro se*—on all four counts of the Third Superseding Indictment. ER 936 (Docket, ECF No. 401).

On May 10, 2024, the district court sentenced Gross to a term of imprisonment of 120 months. ER 944-45 (Docket, ECF No. 451).

On May 13, 2024, the district court entered judgment. ER 2-9.

This appeal followed.

7

## SUMMARY OF ARGUMENT

Gross was lawfully convicted of two counts of violating 18 U.S.C. § 922(g)(1); *United States v. Duarte,* the case cited by Gross for the proposition that § 922(g)(1) violates the Second Amendment as applied to him, has been vacated. Additionally, the trial evidence, viewed in the light most favorable to the prosecution, easily supports Gross's convictions, and Gross cannot show, as he must, that a rational jury lacked a basis to find him guilty on each element of the offenses of conviction.

Finally, the district court correctly denied Gross's Suppression Motion and *Franks* Motion. The district court correctly found probable cause to support the search warrant, despite three reckless omissions and a reckless or intentional misstatement in the affidavit that undermined the credibility of the affiant, based upon a controlled drug purchase conducted by a confidential informant. In addition, the district court correctly found that the controlled drug purchase was untainted by earlier incursions onto the target property by the confidential informant, acting at the direction of an HPD officer under an apparent agency theory.

8

# STANDARD OF REVIEW

The Ninth Circuit reviews *de novo* challenges to the constitutionality of a federal criminal statute. *United States v. Mohamud*, 843 F.3d 420, 432 (9th Cir. 2016), *citing United States v. Vongxay*, 594 F.3d 1111, 1114 (9th Cir. 2010).

This Court reviews evidentiary insufficiency claims *de novo* and findings of fact for clear error. *United States v. Overton,* 573 F.3d 679, 685 (9th Cir. 2009). "Evidence is sufficient to support a conviction unless, viewing the evidence in the light most favorable to sustaining the verdict, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Brugnara*, 856 F.3d 1198, 1207 (9th Cir. 2017), *quoting Overton*, 573 F.3d at 685. In other words, this Court should presume that the trier of fact has resolved any conflicting inferences from historical facts in favor of the prosecution, and then must determine whether the evidence, thus viewed, could have led *any* rational factfinder to find the defendant guilty. *Brugnara*, 856 F.3d at 1207 (emphasis in original), *citing United States v. Nevils*, 598 F.3d 1158, 1163-64 (9th Cir. 2010). If a defendant does not raise a sufficiency-of-the-evidence claim before the district

court, it is reviewed for plain error. *United States v. Benamor,* 937 F.3d 1182,1188 (9th Cir. 2019); *see also United States v. Flyer*, 633 F.3d 911, 917 (9th Cir. 2011) (explaining similarities between plain-error and preserved-error review for sufficiency claims).

A district court's denial of a *Franks* hearing is reviewed *de novo*, but any underlying finding as to whether the government did not intentionally or recklessly make false statements are reviewed for clear error. *United States v. Shyrock*, 342 F.3d 948, 975 (9th Cir. 2003); *United States v. Wong*, 334 F.3d 831, 835-36 (9th Cir. 2003).

Similarly, the denial of a motion to suppress is also reviewed *de novo*; however, a district court's factual findings are reviewed for clear error. *United States v. Hylton*, 30 F.4th 842, 846 (9th Cir. 2022); *United States v. Norris*, 942 F.3d 902, 907 (9th Cir. 2019).

Whether a person has actual or apparent authority to consent to a search is a mixed question of law and fact reviewed *de novo*. *United States v. Arreguin*, 735 F.3d 1168, 1174 (9th Cir. 2013)

## ARGUMENT

## I. THE FELON IN POSSESSION STATUTE DOES NOT VIOLATE THE SECOND AMENDMENT

In Ground I of the appeal, Gross argues that his convictions under 18 U.S.C. § 922(g)(1), Counts 1 and 2, must be reversed because the statute violates his Second Amendment right to bear arms, and is unconstitutional as applied to him. Opening Brief ("OB") 12. The basis for this argument is this Court's three-judge panel decision in *United States v. Duarte*, 101 F.4th 657 (9th Cir. 2024). In *Duarte*, Section 922(g)(1) was held unconstitutional as applied to the defendant based on his particular circumstances. *Id.* 662. As an initial matter, *Duarte* is inapplicable because it applies only to nonviolent felons; Gross has a felony for a violent crime. Presentence Investigation Report at 13, ¶ 48 (referencing Robbery 1 conviction). Moreover, this Court has since granted a rehearing of *Duarte en banc*. 108 F.4th 786 (9th Cir. 2024). The order granting rehearing *en banc* vacated the three-judge panel decision. *Id.*; *United States v. Carillo-Lopez*, 68 F.4th 1133, 1142 n.4 (9th Cir. 2023) (a decision that has been vacated and scheduled for rehearing *en banc* has no precedential effect).

This Court previously upheld Section 922(g)(1) against a Second Amendment challenge in *United States v. Vongxay*, 594 F.3d 1111 (9th Cir. 2010). In *Vongxay*, this Court explained that some individuals were "disqualified from the exercise of Second Amendment rights." 594 F.3d at 1115, *quoting District of Columbia v. Heller*, 554 U.S. 570, 635, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008). This Court concluded that "felons are categorically different from the individuals who have a right to bear arms," and the government can disarm them consistent with the Second Amendment's protections. *Vongxay*, 594 F.3d at 1115.

*Vongxay* remains good law. *See, e.g.*, *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 81, 142 S.Ct. 2111, 213 L.Ed.2d 387 (2022) (quoting *Heller*, 554 U.S. 570, 636, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008)) ("[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill . . . ."); *Duarte*, 101 F.4th at 694 ("*Vongxay* is neither 'clearly irreconcilable nor 'so fundamentally inconsistent' with *Bruen* that we must reject our precedent.") (dissent). The other case cited by Gross, *United States v. Rahimi*, does not conflict with *Vongxay*. *See* 602 U.S. 680, 144 S.Ct. 1889, 219 L.Ed. 2d 351 (2024). *Rahimi* concerned a

Second Amendment challenge to Section 922(g)(8), which prohibits the possession of firearms by persons subject to domestic violence restraining orders, not Section 922(g)(1).  *Id.* at 692.  Moreover, *Rahimi* discussed the long history of firearm regulations prohibiting dangerous persons from possessing arms that is consistent with the categorical approach in *Vongxay*.  *See generally Rahimi*, 602 U.S. at 693-98.

In light of the foregoing, Gross's convictions for violations of 18 U.S.C. § 922(g)(1) should be affirmed.

## II.  THE TRIAL EVIDENCE STRONGLY SUPPORTED GROSS'S CONVICTIONS ON THE FIREARM COUNTS

The evidence at trial was more than sufficient to establish Gross's guilt beyond a reasonable doubt on Count 1 (related to his possession of the loaded Sig Sauer in violation of 18 U.S.C. § 922(g)(1)), Count 2 (related to his possession of the firearms in the Matson container in violation of 18 U.S.C. § 922(g)(1)), and Count 4 (related to his possession of the Sig Sauer in connection with his marijuana trafficking).  On appeal, Gross seeks to relitigate the jury's factual determinations surrounding these issues based upon a selective and self-serving recitation of the trial record.  OB 16, 19-20.

Gross concedes, as he must, that the plain error standard applies because he never raised a sufficiency of the evidence argument with the district court. OB 18 (citing *United States v. Green*, 592 F.3d 1057, 1065 (9th Cir. 2010); *Flyer*, 633 F.3d at 917 (noting similarity between plain error and sufficiency of evidence review). Gross's challenges to whether he possessed the charged firearms and ammunition and whether his possession, use, and carrying of the Sig Sauer were part of his drug trafficking activity are factual disputes a jury has already resolved. The issues were tried and decided and are not open for debate on appeal. *United States v. Thongsy*, 577 F.3d 1036, 1041 (9th Cir. 2009). Factual disputes do not rise to the level of plain error because any "error that hinges on a factual dispute is not obvious as required by the plain error standard." *United States v. Yinjun Zhou*, 838 F.3d 1107, 1011 (9th Cir. 2016), *citing United States v. Scrivner*, 114 F.3d 964, 968 (9th Cir. 1997). Accordingly, there is no plain error in Gross's convictions for possessing firearms and ammunition under § 922(g) or for possessing the Sig Sauer in connection with his drug trafficking in violation of 18 U.S.C. § 924(c).

14

Moreover, substantial evidence overwhelmingly supports the jury's findings that Gross illegally possessed firearms and ammunition, and that the Sig Sauer found under his pillow was possessed, used, and carried to defend his marijuana manufacturing and distribution operation.

As to Count 1, several HPD officers testified at trial to the execution of a search warrant at Gross's house early in the morning on July 30, 2021, and their discovery of Gross, unclothed, in an upstairs bedroom. ER 376-77, 383, 440-41 (Nov. 14, 2023 Tr. Transcript 27:22-28:21, 34:12-22 (Kerr); 91:18-92:1 (Segobia)). There were only two bedrooms in the upstairs suite where the officers found Gross, a Sig Sauer 9mm semiautomatic pistol was found on an empty bed in one bedroom, and Gross's disabled daughter occupied the other bedroom. ER 382, 440 (Nov. 14, 2023 Tr. Transcript 33:2-17 (Kerr); 91:-9-24 (Segobia)). The officers found the Sig Sauer under a pillow, and it was loaded with eleven rounds of ammunition. ER 383-85, 392-93 (Nov. 14, 2023 Tr. Transcript 34:10-35:9; 43:11-44:12 (Kerr). In addition, officers found additional shotgun shells in Gross's downstairs portion of the house. ER 447-61 (Nov. 14, 2023 Trial Tr. 98:23-112:9 (Segobia)). In

15

the light most favorable to the prosecution, a rational juror could have concluded that the Sig Sauer and ammunition and belonged to Gross and that he left the Sig Sauer on his bed, based upon the time of the search, Gross's state of undress at the time he was confronted by law enforcement, the location of the Sig Sauer on the only unoccupied bed in the upstairs bedrooms, the presence of a marijuana growing operation on the property, his text communications, *see infra* pp. 16-17 related to defending his marijuana growing operation from would-be thieves, and the fact that the Sig Sauer was loaded and accessible.

On appeal, Gross urges that the absence of additional supporting evidence such as DNA or fingerprint analysis compels a different conclusion, but Gross cannot establish that no rational jury could have found that he possessed the Sig Sauer based solely upon the government's evidence. OB 19; *United States v. Stargell*, 738 F.3d 1018 (9th Cir. 2013) ("Under the clearly erroneous standard, a reviewing court will not reverse a lower court merely because the reviewing court would have decided the case differently.").

As to Count 4, substantial trial evidence supports the jury's finding that Gross carried, used, and possessed the Sig Sauer as part of

his drug trafficking operation. The government's expert in marijuana cultivation and related firearms use testified that loaded firearms are frequently found with narcotics to protect distributors from being robbed. ER 534-35, 574-77 (Nov. 14, 2023 Trial Tr. 185:20-186:20 (Faulkner); Nov. 15, 2023 Trial Tr. 16:22-19:7 (Faulkner)). In addition, the government introduced texts into evidence from Gross's cellphone. ER 484-85, 615 (Nov. 14, 2023 Trial Tr. 135:1-136:1; Nov. 15, 2023 Trial Tr. 57:7-12 (Law)). Several texts from Gross referenced attempts by others to steal from his marijuana grow operation, and photographs of firearms. ER 598-601 (Nov. 15, 2023 Trial Tr. 40:22-41:5, 42:24-43:16 (Law) ("For the last three weeks I have been chasing bandits off my property.")); ER 604-06 (Nov. 15, 2023 Trial Tr. 46:14-48:3 (photographs of firearms pics)); ER 606-07 (Nov. 15, 2023 Trial Tr. 48:9-49:7) ("In order to settle a dispute. . . . I'm loading it and coming over.")); ER 608-09 (Nov. 15, 2023 Trial Tr. 50:13-51:19 (photograph of long gun with magazine clips) ("Every thief in the acre is trying to steal my herb.")); ER 612 (Nov. 15, 2023 Trial Tr. 54:16-22 ("People are sneaking in to trip me. . . . It never ends.")); ER 613 (Nov. 15, 2023 Trial Tr. 55:8-14 ("Battled the thieves very day for the last two weeks. This morning I

cut.")). In sum, ample evidence supported the jury's finding that Gross possessed a handgun to protect his marijuana grow operation.

On appeal, Gross makes the conclusory argument that the cellphone texts were "insufficient" to prove the connection between the firearm and the grow operation, and argues that "there were no threats regarding physical violence or that anyone was going to hurt them." OB 20. Notwithstanding this argument, a rational juror could have found that Gross possessed his firearm in furtherance of his efforts to manufacture and possess with intent to distribute marijuana.

Finally, as to Count 2, substantial evidence at trial supports the jury's finding that Gross possessed the firearms and ammunition found in the Matson shipping container on the defendant's property. The government presented evidence that agents found and seized 14 firearms in the shipping container. ER 407-08 (Nov. 14, 2023 Trial Tr. 58:19-59:2) (Kerr). The shipping container had indicia of Gross's ownership, including a label on the outside of the container with his name, and a bank card in his name and a USPS parcel addressed to him within the container. ER 468 (Nov. 14, 2023 Trial Tr. 119:7-20 (Segobia) (labeling on outside of container, U.S.P.S. parcel, and bank

18

card with name Loran Gross)).  Finally, Gross's cellphone contained photographs of a rifle and shotgun in his house, which appeared to be the same the rifle and shotgun that were seized from the container.  ER 835-37 (Nov. 16, 2023 Trial Tr. 98:16-100:12 (Closing Argument) (asking jury to compare Exhibit 8 cellphone photographs to physical firearm Exhibits 1b and 2).  A rational jury could have concluded from this evidence, and the presence of a weapons arsenal in proximity to a marijuana grow operation that had been the frequent target of theft attempts, that the firearms in the shipping container belonged to Gross.

On appeal, Gross argues for a contrary conclusion by reciting the evidence that he presented to the jury, including testimony from his son that the container and the firearms within it had belonged to his son, and corroborating evidence such as the fact that the shipping container had been locked, that many of the firearms within the shipping container were also locked in a safe which bore his son's initials, and that no keys were recovered from Gross's property.  OB 17, 20.

However, Gross fails to establish that no rational jury could find that he nonetheless possessed the container firearms.  The jury heard the testimony and evidence offered by Gross and did not find it

19

persuasive.  *Shlup v. Delo*, 513 U.S. 298, 330, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995) ("[T]he assessment of the credibility of witnesses is generally beyond the scope of review.").  Indeed, the government introduced texts from Gross indicating that he, and not his son, exercised control over firearms in the container.   ER 605-06 (Nov. 15 Trial Tr. 47:11-48:3 (pictures of firearms) ("I lock everything in the Conex [container]")).  Because this Court must resolve any conflicting inferences in favor of the prosecution, it cannot be said that no rational factfinder could find Gross guilty on the trial record.  *Brugnara*, 856 F.3d at 1207 (emphasis in original), *citing United States v. Nevils*, 598 F.3d 1158, 1163-64 (9th Cir. 2010).

## III.  THE DISTRICT COURT CORRECTLY FOUND THE SEARCH WARRANT WAS SUPPORTED BY PROBABLE CAUSE.

The district court correctly denied both Gross's pretrial Suppression Motion and *Franks* Motion.  On appeal, Gross challenges both rulings upon the ground that the district court erred in finding probable cause in the supporting affidavit signed by HPD Officer Wyatt K. Kaili-Leong.  ER 189-99.

**A.** **The District Court Correctly Found That the Omitted Derogatory Information About the Confidential Informant and Gaps in Surveillance Did Not Undermine Probable Cause.**

As to Ground Three, the district court correctly denied Gross's *Franks* Motion because it found that the affidavit was supported by probable cause and that a confidential informant referenced in the affidavit was reliable, despite the fact that the affidavit omitted detrimental information about the confidential informant and included a misrepresentation about a surveillance gap. Gross fails to establish on appeal that the district court's finding is clearly erroneous. AB 22.

"A defendant is entitled to a *Franks* hearing only if he makes a two-fold showing: intentional or reckless inclusion [of a false statement] or omission, and materiality." *United States v. Bennett*, 219 F.3d 1117, 1124 (9th Cir. 2000). "A defendant satisfies this two-fold obligation by making a 'substantial preliminary showing that 'the affidavit contained intentionally or recklessly false statements, and … [that] the affidavit purged of its falsities would not be sufficient to support a finding of probable cause." *Id.*, *quoting United States v. Meling*, 47 F.3d 1546, 1553 (9th Cir. 1995).

21

The trial court found that Gross made a substantial preliminary showing of the first prong of the *Franks* analysis, but not the second. The affidavit explained that a confidential informant provided the affiant with information about a marijuana grow operation at Gross's residence, that the confidential informant had witnessed Gross distributing marijuana from the residence, and that the confidential informant had seen a firearm on the property. ER 191-92. The affiant also described a controlled drug purchase that the confidential informant had conducted, from Gross, at his direction. ER 192.

Regarding the first *Franks* prong, the district court found that the search warrant affidavit contained three reckless omissions and one reckless or intentional misstatement, which all bore on the credibility of the confidential informant. The district court found that affiant failed to mention in his affidavit that the confidential informant was previously paid for cooperation and had had a lengthy criminal history that spanned from 2002 through 2018, and that these omissions were "reckless." ER 30. The district court also found that the affiant failed to mention that the confidential informant failed to provide photographic proof of the marijuana grow at the target residence upon

request, and that this omission was also reckless. ER 32. Finally, the district court found that the affiant's assertion that he "conducted continuous surveillance" of the confidential informant during a controlled drug purchase, and that he had seen the confidential informant "leav[e] the residence," where in fact there was a break in surveillance, was either a reckless or intentional misstatement. ER 35.

Nonetheless, as to the second *Franks* prong, the district court correctly found that the omissions and misstatements were not material and the affidavit was supported by probable cause, in part, because the affidavit otherwise established the confidential informant's reliability. *United States v. Ippolito*, 774 F.2d 1482, 1484 (9th Cir. 1985) (factual findings regarding materiality reviewable under clearly erroneous standard). The materiality prong of the *Franks* analysis was explained in *United States v. Martinez-Garcia*:

> Probable cause exists if the affidavit provides a "substantial basis for believing that criminal activity might have been occurring at the Martinez-Garcia residence . . . In making this evaluation, we consider the credibility of the informant, including his history of providing reliable information in previous investigations and any prior criminal convictions for crimes of dishonesty. Also, we examine whether the informant's information was bolstered by

23

> independent police investigation of the tip or
> corroboration by other confidential informants.

*United States v. Martinez-Garcia*, 397 F.3d 1205, 1216 (9th Cir. 1983)

(cited by district court, ER 37). The district court found that the

affidavit demonstrated the confidential informant's reliability,

notwithstanding any reckless or intentional omissions or statements.

The district court expressly relied upon the fact that affidavit indicated

the confidential informant had a history of reliably providing

information regarding drug purchases and distribution to law

enforcement on three prior occasions in the four months prior the

affidavit, which resulted in the recovery of illegal narcotics. ER 37; *see*

*United States v. Reeves*, 210 F.3d 1041, 1045 (9th Cir. 2000)

(informant's prior cooperation outweighed doubts of the confidential

informant's credibility raised by the history of criminal conduct

involving dishonesty). Notably, the prior instances of cooperation

involved the same type of criminal activity. ER 37; *see Reeves*, 210 F.3d

15 1045 ("When the information involved in the past involved the same

type of criminal activity as the current information, the inference of

trustworthiness is even stronger."). Moreover, the district court found

that the confidential informant also accurately described Gross's property.  ER 37.

The district court found that the indicia of the confidential informant's reliability outweighed concerns raised by the confidential informant's undisclosed criminal record.  ER 38.  The district court also found that the fact that the confidential informant failed to send photographic evidence of the marijuana grow when asked might be explained by the lack of opportunity, rather than unreliability.  ER 39.  Finally, the district court found that, while the affiant's misstatement regarding his continuing surveillance "troubling," the evidence cumulatively supported probable cause.  *Id.*  In light of the foregoing, and "the presumption of validity with respect to the affidavit supporting a search warrant," the district court correctly determined that the warrant would have been supported by probable cause, even if the omitted information and an accurate statement regarding the affiant's surveillance had been included in the affidavit.  *Id.*

On appeal, Gross argues that the district court clearly erred by finding that the affidavit omissions or misstatements were not material because the affidavit lacked "independent police investigation of the tip

or corroboration by other confidential informants." OB 22. The only case cited by Gross for this proposition, *Martinez-Garcia*, does not require such independent investigation and corroboration to find that an informant is reliable. *Martinez-Garcia*, 397 F.3d at 1216. Gross also argues that the district court incorrectly weighed the material omissions and false statement in the affidavit, and should have concluded that these falsehoods "hurt the credibility of the Government" and shows "that the independent police investigation was sloppy and lacking." OB 23. This argument, however, collapses the falsity and materiality prongs of the *Franks* analysis, and fails to engage in any materiality inquiry at all.

In light of the foregoing, Gross failed to establish that the district court's finding that the confidential informant referenced in the warrant affidavit was clearly erroneous. Moreover, as demonstrated below, the district court found that probable cause for the warrant was independently established by a controlled drug purchase.

26

B.   **The District Court Properly Denied the *Franks*
     Motion and Suppression Motion Based on the
     Record of the Controlled Drug Purchase.**

The district court denied both Gross's *Franks* Motion and

Suppression Motion on the ground that it found that probable cause

supported the warrant affidavit at issue on the basis of a controlled

drug purchase that law enforcement conducted from Gross using the

confidential informant.  ER 40.  Moreover, the district court correctly

found that that the warrant was not prompted or motivated by

incursions by the confidential informant onto Gross's property that

Gross argues are illegal.  *Id.*

In relevant part, at issue in both the *Franks* Motion and

Suppression Motion was Gross's contention that the affidavit

supporting the warrant for the search of his property depended upon a

controlled drug purchase that he denied ever took place.  ER 183, 187

(*Franks* Motion); ER 267 (Suppression Motion); ER 32 (district court

order).  The district court held an evidentiary hearing to resolve this

factual issue, and found that the affiant "credibly testified regarding the

events of the controlled purchase because he appeared to have a

generally clear memory of the events surrounding the controlled

purchase." ER 32.  By contrast, the district court "did not believe Gross when he testified that he did not sell drugs to the CI (or, at least, the Court believes based on Gross' testimony that Gross might have *given* the CI drugs)."  *Id.*

The district court also rejected Gross's claim that two earlier incursions upon Gross's property by the confidential informant at the direction of law enforcement were unlawful, or otherwise invalidated the search warrant.  The district court cited *United States v. Arreguin* for the proposition that, "[u]nder the apparent authority doctrine, a search is valid if the government proves that the officers who conducted it reasonably believed that the person from whom they obtained consent had actual authority to grant that consent."  ER 31, *citing* 735 F.3d 1168, 1175 (9th Cir. 2013).  The district court found that the affiant was "credible when he testified that the CI told him she was staying at both Gross' residence and her mother's home, and so he believed she had authority to be at Gross' property" and found "this belief was reasonable."  ER 31.  Based upon this finding, the district court ruled that the two incursions "were valid searches, albeit with no tangible results."  ER 40.

Moreover, the district court correctly held that probable cause for the warrant was based upon the aforementioned controlled purchase and was therefore sourced independently of the incursions upon the defendant's property by the confidential informant. ER 41, *citing Murray v. United States*, 487 U.S. 533, 541, 542 (1988) (citing independent source doctrine). Based on this finding, the district court concluded that "nothing that the CI saw during the June incursions motivated Kaili-Leong to apply for the search warrant" and "nothing about the June incursions was mentioned in the Affidavit." *Id.* Because probable cause for the warrant was independently sourced from the controlled drug purchase, the district court correctly, and without clear error, concluded the warrant was valid. *United States v. Saelee*, 51 F.4th 327, 335 (9th Cir. 2022) (independent source doctrine reviewed for clear error). Thus, even if, *arguendo*, the district court erred in finding that the officer's reliance on the confidential informant's apparent authority was reasonable, it did not lead to the search warrant that resulted in Gross's arrest and charges.

On appeal, Gross challenges the district court's finding of probable cause by seeking to re-litigate whether the controlled drug purchase

ever took place.  OB 26.  The defendant argues that the district court erred because the HPD's policy regarding the "execution of controlled purchases of drugs was not followed" and that the confidential informant had a motive to implicate the defendant.  *Id.*  However, the district court's findings that the controlled drug purchase took place and established probable cause for the warrant were based in part upon the testimony of both the affiant and the defendant.  ER 32.  Accordingly, these findings were based upon credibility determinations and are entitled to special deference.  *United States v. Arreguin*, 735 F.3d 1168, 1174 (9th Cir. 2013), *quoting United States v. Craighead*, 539 F.3d 1073, 1082 (9th Cir. 2008).  Although the defendant urges this Court to make a different finding regarding probable cause, absent a "definite and firm conviction that a mistake has been committed," there is no clear error here.  *United States v. Stargell*, 738 F.3d 1018 (9th Cir. 2013).

## **CONCLUSION**

For the foregoing reasons, Gross's convictions and judgment should be affirmed.

Respectfully submitted,

KENNETH M. SORENSON
*Acting United States Attorney*

*s/* Gregg Paris Yates
GREGG PARIS YATES
*Assistant U.S. Attorney*
*Room 6100*
*PJKK Federal Building*
*300 Ala Moana Blvd.*
*Honolulu, Hawaii  96850*
*Telephone:  (808) 541-2850*
*Gregg.Yates@usdoj.gov*

APRIL 1, 2025, Honolulu, Hawaii.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 24-3079

I am the attorney or self-represented party.

**This brief contains** | 5,693 | **words,** including | | words

manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

(●) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  - [ ] it is a joint brief submitted by separately represented parties.
  - [ ] a party or parties are filing a single brief in response to multiple briefs.
  - [ ] a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated | | .

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Gregg Paris Yates | **Date** | April 1, 2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov